UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| FEDERAL DEPOSIT INSURANCE, CORPORATION, as Receiver for Mutual Bank, | ) ) ) ) | 12-cv-7496 |
| Plaintiff, | ) ) | |
| v. | ) ) ) | Judge Sharon Johnson Coleman |
| PARAMESWARI VELUCHAMY and PETHINAIDU VELUCHAMY, | ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

In July 2009, an Illinois state agency closed Mutual Bank and appointed the Federal Deposit Insurance Corporation as receiver. Various federal lawsuits resulted from Mutual Bank's closing. In one suit, the FDIC sued multiple former directors of the bank, including Parameswari and Pethinaidu Veluchamy, alleging that the directors breached their fiduciary duty by grossly mismanaging bank assets. Additionally, the FDIC also sued the Veluchamys in federal bankruptcy court, alleging that the FDIC's claims against the Veluchamys are nondischargeable debts. The FDIC now moves this court to withdraw the bankruptcy matter from bankruptcy court. Because the FDIC shows good cause for a withdrawal, the court grants the motion.

**Background**

The facts of the underlying matter are more fully set forth in the district court's opinion in *FDIC v. Mahajan*, No. 11 C 7590, 2012 WL 3061852 (N.D. Ill. July 26, 2012) (Kendall, J.). In short, however, the FDIC, as receiver, alleged that the former directors and officers of Mutual

1

Bank unwisely approved twelve risky loans that resulted in over $100 million in losses for the bank, that they approved unlawful dividends of more than $10 million, and that they diverted the bank's assets for personal use. On October 25, 2012, the FDIC asserted multiple counts against the defendants in district court, including for negligence, gross negligence, breach of fiduciary duty, breach of loyalty, and wasting of corporate assets.[1] On July 26, 2012, the district court dismissed certain counts, but the case remains pending against the defendants. Discovery and settlement discussions are currently underway before a magistrate judge.

On August 17, 2012, the FDIC, acting as receiver for Mutual Bank, initiated an adversary proceeding against the Veluchamys in bankruptcy court. The FDIC sought a finding that about $92 million of its claims against the Veluchamys constituted nondischargeable debts under federal bankruptcy law. In particular, the FDIC alleged that these debts were nondischargeable under § 523(a)(4) of the bankruptcy code because the Veluchamys debts arose from "fraud or delfalcation while acting in a fiduciary capacity." The FDIC subsequently moved the bankruptcy court to withdraw the adversary proceeding from bankruptcy court to district court. On September 18, 2014, the clerk of the bankruptcy court transmitted the FDIC's motion to the district court, pursuant to Rule 5011 of the Federal Rule of Bankruptcy Procedure. The adversary proceeding also remains pending in bankruptcy court as *FDIC v. Veluchamy*, No. 12-1281.

The parties offer alternative proposals for how the litigation should proceed. The FDIC, as receiver, prefers that both cases proceed in district court. The Veluchamys prefer that this court deny the withdrawal motion, that the adversary proceeding remain before the bankruptcy

---

[1] The FDIC did not name the Veluchamys as defendants in its original complaint because of the Veluchamys Chapter 7 petition in bankruptcy court. After the bankruptcy court permitted the FDIC to proceed in district court against the Veluchamys, the FDIC filed an amended complaint.

court, and that the bankruptcy court stay the adversary proceeding while the parties continue to litigate the issue of the Veluchamys' underlying liability in district court. They propose that if the district court suit resolves in their favor, then the bankruptcy court should dismiss the adversary proceeding; if the district court finds the Veluchamys liable, then the bankruptcy court matter should proceed in order to determine dischargeability.

**Legal Standard**

Federal law allows district courts to "refer" "proceedings arising under title 11 or arising in or related to a case under title 11" to specialized bankruptcy judges. 28 U.S.C. § 157(a); *see* N.D. Ill. IOP 15(a); *Exec. Benefits Ins. Agency v. Arkison*, 134 S. Ct. 2165, 2171 (2014). A district court, however, "may withdraw, in whole or in part, any case or proceeding [referred to a bankruptcy judge], on its own motion or timely motion of any party, for cause shown." § 157(d). Neither federal law nor the Supreme Court has clarified what constitutes "cause" for withdrawing a matter. Nor has the Seventh Circuit. In 1989, the Seventh Circuit noted the "paucity of judicial opinions construing this provision," *In re Powelson*, 878 F.2d 976, 979 (7th Cir. 1989); twenty-five years later, the paucity persists.[2] The decision whether to grant withdrawal remains within the discretion of the district court. That is, the text of § 157(d) indicates that even if "cause" for withdrawal is shown, a district court is not compelled to

---

[2] This may be, in part, because district-court orders withdrawing matters from bankruptcy court are "interlocutory and thus unreviewable until after a judgment has been issued." *Good v. Voest-Alpine Indus., Inc.*, 398 F.3d 918, 924 (7th Cir. 2005); *see Caldwall-Baker Co. v. Parsons*, 392 F.3d 886, 888 (7th Cir. 2004) ("No court of appeals has engaged in appellate review of an order either granting or denying withdrawal of a reference.") (listing cases); *accord In re McGaughey*, 24 F.3d 904, 908 (7th Cir. 1994). The Seventh Circuit, however, has interpreted § 157(d)'s "mandatory withdrawal" clause. *See In re Vicars Ins. Agency, Inc.*, 86 F.3d 949, 953–54 (7th Cir. 1996).

3

withdraw.  *See* 1-3 *Collier on Bankruptcy* P 3.04(1)(b) (16th ed. 2014) ("Even if cause exists . . . there is no mandate that the reference *must* be withdrawn.").

The FDIC, citing one opinion from this district, asserts that district courts "generally" consider six factors when deciding whether cause exists to withdraw a proceeding from bankruptcy court: 1) the core or non-core nature of the proceeding; 2) judicial economy and convenience; 3) uniformity and efficiency in bankruptcy administration; 4) forum shopping and confusion; 5) conservation of debtor and creditor resources; and 6) a party's jury-trial request, if any.  Pl. Mot. 5, ECF No. 1, p. ID # 5 (quoting *In re Emerald Casino, Inc.*, 467 B.R. 128, 135 (N.D. Ill. 2012)).  This six-factor standard, however, derives from no precedential opinion of this circuit.[3]  The Veluchamys rely on another opinion from this district, which quotes from *In re Clark* to suggest that the FDIC "must" establish that withdrawal "is narrowly tailored to serve" "a higher interest than that recognized by Congress."  *In re Clark*, No. 95 C 2773, 1995 WL 495951, at *3 (N.D. Ill. Aug. 17, 1995).  It appears that this quote is derived an Eastern District of Michigan decision which inadvertently cited to a standard for closing courtrooms during voir dire in criminal cases.  The perpetuation of the citation error will not continue in this case.  This standard, too, is not the law of this circuit.  A review of relevant case law, in this circuit and others, indicates that district courts may simply consider any relevant factor when deciding whether to withdraw a matter from bankruptcy court.

---

[3] The citation chain indicates that the standard derives, ultimately, from a 1985 Fifth Circuit opinion in which the court, in acknowledged dicta, offered "general principles" to guide district courts "in determining whether to refer or withdraw the reference."  *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 998 (5th Cir. 1985) (Jones, J.).  The Second Circuit has adopted a similar standard.  *See In re Orion Pictures Corp.*, 4 F.3d 1095, 1101 (2d Cir. 1993).

**Discussion**

First, the court places particular weight on whether the matter before the bankruptcy court is a "typical core proceeding," one in which the bankruptcy judge has constitutional authority to enter a final judgment, or a "non-core" proceeding. *Exec. Benefits*, 134 S. Ct. at 173. Federal law distinguishes between two kinds of proceedings in bankruptcy court: "core" and "non-core" proceedings. § 157. Rather than defining "core," § 157 provides sixteen examples of core proceedings. § 157(b)(2). Relevant here, a core proceeding is a "determination[n] as to the dischargeability of particular debts." § 157(b)(2)(H). Here, the parties agree that the bankruptcy matter is a core proceeding. Federal law envisions that core proceedings, generally, belong in bankruptcy court, where that court has *statutory* authority to "enter final judgment on the [core] claim." *Exec. Benefits*, 134 S. Ct. at 2172.

But there is an important distinction. In 2011, in *Stern v. Marshall*, the Supreme Court held that certain claims can be "core" within the meaning of federal law and yet not be ones over which bankruptcy judges have Article III authority to enter final judgments. *Stern v. Marshall*, 131 S. Ct. 2594, 2611 (2011); *see Exec. Benefits*, 134 S. Ct. at 2172–73. The Supreme Court now refers to such claims as "*Stern* claims." *Exec. Benefits*, 134 S. Ct. at 2172. The Supreme Court has offered only a few examples of *Stern* claims. The claim at issue in *Stern* itself was a common-law counterclaim for tortious interference brought by a bankrupt against a creditor to the estate. *Stern*, 131 S. Ct. at 2601. Because § 157(b)(2)(c) lists "counterclaims by the estate against persons filing claims against the estate" as a "core" proceeding, the bankruptcy court in *Stern* had *statutory* authority to enter a final judgment, but the Supreme Court held that it did not have constitutional authority to do so. *Id.* at 2611. Similarly, this last summer, in *Executive*

5

*Benefits*, the Court "assume[d] without deciding" that fraudulent-conveyance claims brought by a Chapter 7 trustee against the debtor were *Stern* claims. *Exec. Benefits*, 134 S. Ct. at 2174.

The Supreme Court used the term "typical core proceeding," in contrast to *Stern* claims, to refer to matters that are *both* "core" within the meaning of § 157 *and* constitutionally may be "adjudicated to final judgment by the bankruptcy court." *Id.* at 2172–73. After *Stern*, when a district court assesses the nature of a case before the bankruptcy court in order to decide whether to grant withdrawal, it is imperative to distinguish between "typical core proceedings" and other kinds of claims. The parties suggest that the relevant factor for the court to consider is simply whether a matter is core or non-core. But, as explained above, a matter can be core and still not constitutionally subject to final authority before the bankruptcy court.

The Second Circuit, at least prior to *Stern*, regarded the core/non-core distinction as "the most important" factor in a withdrawal analysis. *In re Burger Boys, Inc.*, 94 F.3d 755, 762 (2d Cir. 1996); *accord In re Orion Pictures Corp.*, 4 F.3d 1095, 1101 (2d Cir. 1993). After *Stern*, several courts in that circuit have reinterpreted this factor to focus on whether the bankruptcy court has final adjudicative authority over a matter. *See, e.g.*, *In re Arbco Capital Mgmt.*, 479 B.R. 254, 262 (S.D.N.Y. 2012); *In re Lehman Bros. Holdings Inc.*, 400 B.R. 179, 188 (S.D.N.Y. 2012). In a rigorous opinion analyzing the impact of *Stern* on withdrawal motions, one court explained that "the relevant inquiry" post-*Stern* is solely "whether a matter is core or non-core, but whether the bankruptcy court has the authority to finally adjudicate the matter." *Arbco*, 479 B.R. at 262 (Oetken, J.); *accord* 1-3 *Collier on Bankruptcy* P 3.04(1)(b) (stating that a sole emphasis on the core/non-core distinction "may have little utility in a post-*Stern* world"). This court agrees. Although this circuit, even before *Stern*, never placed superlative weight on the

6

core/non-core distinction,[4] the court agrees that this factor, as reinterpreted post-*Stern*, merits particular consideration. In other words, in the language of *Executive Benefits*, courts must now distinguish among "typical core proceedings," *Stern* claims, and non-core claims. Here, neither party suggests that the FDIC's core claims for nondischargeability findings are *Stern* claims. And there is no reason to think a claim for a nondischargeability determination under § 523(a)(4) is such a claim. The court finds that the bankruptcy matter at issue is a "typical core proceeding" and that this weighs against withdrawal.

Second, the Veluchamys argue that the complexity of the dischargeability determination also weighs against withdrawal. They claim that, in this case, the determination turns on whether their actions constitute "defalcation by a fiduciary" under § 523(a)(4). They argue that this is a question of law best left for the bankruptcy court. *See* Defs. Resp. 6–7, p. ID # 45–46. They also argue that withdrawal would send this "complex legal determination" to a jury, which would prejudice the Veluchamys and "inevitably cause confusion." *Id.* at 7, p. ID # 46. This argument fails for two reasons. To the extent that the dischargeability determination does present a question of law, a court—whether a bankruptcy court or a district court—will resolve it; juries do not decide questions of law. Additionally, although the dischargeability determination may be complex, juries frequently grapple with and resolve complex questions. The assumption that a jury is competent to resolve the issues before it is a feature of our judicial system. The complexity of the issue weighs neither in favor of nor against withdrawal.

---

[4] The Veluchamys cite an opinion of this district stating otherwise. Defs. Resp. 8, p. ID # 47 (quoting *In re Comdisco, Inc.*, No. 04 C 5570, 2004 WL 2674398, at *2 (N.D. Ill. Oct. 15, 2004)). *In re Comdisco* cites *In re Sevko, Inc.*, 143 B.R. 114, 117 (N.D. Ill. 1992). Nothing in *In re Sevko* suggests that the core or non-core nature of a proceeding is the "most important" factor for withdrawal. In fact, *In re Sevko* does not even suggest that this factor merits *any* special weight.

7

The FDIC contends that the parallel nature of both proceedings supports withdrawal. It notes that both lawsuits "share factual allegations, similar legal theories, and the same parties," but this alone carries little weight. It is not uncommon for a single set of facts to produce litigation before multiple judicial tribunals, even when bankruptcy is partly at issue. *See Good v. Voest-Alpine Indus., Inc.*, 398 F.3d 918, 927 (7th Cir. 2005) (permitting a state-law claim to proceed in state court while a bankruptcy action proceeds in federal court "is not particularly unusual or onerous"). Here, however, labeling the dual lawsuits as "parallel" insufficiently describes the state of the litigation. The adversary proceeding in bankruptcy court remains at a preliminary stage. The district-court lawsuit, in contrast, has progressed considerably since filing and is at an advanced stage. The district court has issued orders almost monthly for three years, and it has also issued four signed opinions in the case. Discovery has been ongoing for a year-and-a-half. The district court has great familiarity with this matter, whereas the bankruptcy has almost none. In *In re Chateaugay Corp.*, a case that the Veluchamys cite in opposition to withdrawal, the district court denied a withdrawal motion in part because the bankruptcy court's "mastery of both the facts and law relating to [the plaintiff's] protracted reorganization [would] allow it to digest the materials and resolve th[e] dispute more efficiently than would a court completely new to the case." 193 B.R. 669, 677 (S.D.N.Y. 1996). Here, the same consideration cuts the other way: the district court's mastery of the facts allows it to resolve the matter more efficiently.

Additionally, the court also considers the opinion of the bankruptcy court as to whether the district court should withdraw a matter. *See In re Vicars Ins. Agency, Inc.*, 96 F.3d 949, 954 (7th Cir. 1996) ("Some bankruptcy courts . . . make recommendations to the district court as to whether" the latter should grant a withdrawal motion.). Here, the bankruptcy court's position is

clear. On October 30, 2012, at an oral hearing, the bankruptcy court told the parties: "What I would suggest is that in any briefing before the district court, you state that it is the position of this court that withdrawal of the reference would be a very useful thing to avoid unnecessary expense to the parties." Tr. 15, Defs. Resp., Ex. B, ECF No. 8-2, p. ID # 64. The bankruptcy court emphasized: "I hope you both agree that it ought to be withdrawn and that you can submit that immediately." *Id.* at 16, p. ID # 65. The position of the bankruptcy court carries particular weight for the same reason that core proceedings generally belong in bankruptcy court: the bankruptcy court has special familiarity with bankruptcy laws and procedures. The bankruptcy court in this case determined that the optimal outcome would be for the dischargeability determination to occur in district court.

Concerns about issue preclusion and judicial economy underlay the bankruptcy court's position. The bankruptcy court explained that if this court were to deny the withdrawal motion, the bankruptcy court would delay its dischargeability finding until the district court determined liability.

> And then we'd have to have argument here about the extent to which findings that were made in the district court proceeding had a collateral estoppel effect on the issues that I would have to determine in deciding the question of dischargeability. And if there was not complete collateral estoppel, we'd be in a situation of calling the same witnesses back to address the question of intent that might be left open. So having all of the matters involved in the same proceeding would probably be very much in the parties' best interest.

*Id.* at 16–17, p. ID # 65–66. The Veluchamys disagree, arguing that concerns about preclusion are "premature" because "they are not able to thoroughly analyze the extent to which factual findings" in the district court would merit preclusion effect in the bankruptcy court. Defs. Resp. 12, p. ID # 51. This court agrees with the bankruptcy court's position: the possibility that the

bankruptcy court would need briefing and argument on the preclusion issue unnecessarily complicates this case and undermines, rather than promotes, judicial economy.

**Conlusion**

The bankruptcy lawsuit between the FDIC, as receiver, and the Veluchamys is a "typical core proceeding" that a bankruptcy court ordinarily should hear. But, in this case, the district court's in-depth knowledge of the case, the bankruptcy court's recommendation, and legitimate concerns about issue preclusion all weigh in favor of withdrawal. The court finds that withdrawal is appropriate and grants the motion of the FDIC, as receiver.[5]

_____
SHARON JOHNSON COLEMAN
United States District Judge

DATED:  October 21, 2014

---

[5] The FDIC states that if this court grants the withdrawal motion, it will move to consolidate the adversary proceeding and the liability lawsuit. The FDIC may, if it chooses, file such a motion before the district judge presiding over the underlying case.